IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| RYDER SYSTEM, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 2:17cv718-MHT |
| ) | (WO) |
| CHARLESTON ALUMINUM ) | |
| TRANSPORTATION, LLC and ) | |
| DAVID E. ALLEN, ) | |
| ) | |
| Defendants. ) | |

OPINION

Plaintiff Ryder System, Inc., filed this lawsuit against defendants Charleston Aluminum Transportation, LLC, and David E. Allen pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9607 and 9613, and the Oil Pollution Liability and Compensation Act (OPLCA), 33 U.S.C. §§ 2709 and 2715, seeking reimbursement for cleanup costs incurred as a result of a truck accident. The court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 9613(b) (CERCLA), and 33 U.S.C. § 2717(b) (OPLCA). After entering default

against Charleston Aluminum, the court granted Ryder System's motion for default judgment and entered judgment. This opinion explains the court's reasons for granting the default-judgment motion.

## I. DEFAULT-JUDGMENT STANDARD

While entry of default is a necessary condition for obtaining a default judgment, it is not sufficient. "[A] default is not 'an absolute confession by the defendant of his liability and of the plaintiff's right to recover,' but is instead merely 'an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability.'" *Capitol Records v. Rita Carmichael*, 508 F. Supp. 2d 1079, 1083 (S.D. Ala. 2007) (Steele, J.) (citations omitted). A default judgment, including the specific nature and extent of the relief sought, must be adequately supported in the record. *See*, *e.g.*, *Boswell v. Gumbaytay*, No. 2:07-CV-135, 2009 WL 1515912, at *8 (M.D. Ala. June 1, 2009) (Watkins, J.) (in entering a

default judgment, "[t]he court's core duty is 'to assure itself that there is a legitimate basis for any damage award it enters'") (quoting *Anheuser–Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003)).

II. FACTUAL BACKGROUND

Based on the well pleaded factual allegations of the complaint, and the affidavits and exhibits submitted by plaintiff Ryder System in support of the motion for default judgment, the court found the following facts. On May 27, 2015, a vehicular accident occurred in Lowndes County, Alabama. Defendant Allen was driving a tractor-trailer in the course of his employment for defendant Charleston Aluminum at the time of accident. The tractor-trailer had been leased to Charleston Aluminum by Ryder System. Allen was following too closely to truck ahead of him, so that when that truck had to slow down, Allen could not stop in time and rear-ended it. As a result of the crash, the transformer

3

unit carried by Allen's trailer fell off and discharged oil and/or dieletric fluid on to the ground.

On the same day, local authorities contacted United States Environmental Services ("USES") to clean up the spilled substances and the soil contaminated by the substances at the accident site, and Ryder System entered into a "response action contract" for USES to clean up the contamination at the accident site. After completing the cleanup, USES billed Ryder System $ 116,990.23 for the costs of the cleanup, which Ryder System paid. Ryder System repeatedly informed Charleston Aluminum that it was legally responsible for the cleanup costs and demanded reimbursement, but Charleston Aluminum did not respond.

### III. DISCUSSION

In the motion for default judgment, Ryder System sought reimbursement of the $ 116,990.23 it expended for cleanup costs, and for costs and attorneys' fees in the amount of $ 19,058.73 for pursuing this action.

Ryder System sought to hold Charleston Aluminum liable under 42 U.S.C. §§ 9607(a) and 9613(f) of CERCLA, which governs the cleanup of hazardous substances. Section 9607(a) allows an innocent party to bring a claim for recoupment of cleanup costs, while § 9613(f) allows a responsible party to bring a claim for contribution to the costs of cleanup from other responsible parties during or after a civil action under CERCLA. *See Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996). Ryder System's claim is best viewed as an action for recoupment under § 3607(a).[1] That statute provides, in relevant part, that "the owner and operator of a vessel or a facility ... shall be liable for ... any ... necessary costs of response incurred by

---

1. It appears that Ryder System cannot proceed under § 9613(f), which "authorizes contribution claims only 'during or following' a civil action under" § 9606 or § 9607(a) of CERCLA. *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 168 (2004). Ryder System represents in its brief that it "was under administrative enforcement measures at the time of the cleanup." Brief (doc. no. 27) at 12. However, the record contains no allegations or evidence indicating the existence of a "civil action" under §§ 9606 or 9607(a).

any other person consistent with the national contingency plan." § 9607(a)(1) & (4)(B). As noted above, "[t]o bring a cost recovery action based solely on § [9607(a)]..., [the plaintiff] would have to be an innocent party to the contamination." *Redwing Carriers*, 94 F.3d 1489, 1496 (11th Cir. 1996). Here that is the case, as there is no evidence before the court that Ryder System caused the contamination.

To prove a claim under § 9607(a), Ryder System must establish that (1) the contamination occurred in connection with a "facility" as defined in 42 U.S.C. § 9601(9); (2) "a release or threatened release of a hazardous substance has occurred;" (3) "the release or threatened release has caused the plaintiff to incur response costs consistent with the 'national contingency plan (NCP)'"; and (4) Charleston Aluminum is a "covered person" under § 9607(a). *Redwing Carriers*, 94 F.3d at 1497 (*citing Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1150 (1st Cir. 1989); *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 668 (5th Cir. 1989); *Ascon*

*Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152-53 (9th Cir. 1989)).

Ryder System met each of these requirements. First, the contamination occurred in connection with a "facility" as defined in 42 U.S.C. § 9601(9): that definition includes "any ... motor vehicle" and the contamination occurred in connection with the operation of a tractor-trailer.

Second, a release or threatened release of hazardous substances occurred. As a result of the accident, dielectric fluid and/or oil from the transformer was spilled in the soil, local authorities immediately contacted USES to clean up the contamination, and Ryder System entered a "response action contract"[2] with USES to

---

2. CERCLA defines a "response action contract" as a written contract or agreement entered into by a response action contractor with a potentially responsible party to provide "any removal under this chapter, with respect to any release or threatened release of a hazardous substance or pollutant or contaminant." 42 U.S.C. § 9619(e)(1); *see also* § 9619 (e)(2) (defining "response action contractor" as "any person who enters into a response action contract with respect to any release or threatened release of a hazardous substance

pay for cleanup of the discharged hazardous fluids and contaminated soils. *See* Affidavit of Rose Mandigo (doc. no. 24-1); Agreement to Conduct Services (doc. no. 27-4). The cleanup took three weeks. *See* Invoice (doc. no. 27-3) at 2. As Ryder System points out, the dieletric fluid and oil in older transformers, many of which are still in use, are frequently contaminated by polychlorinated biphenyls (PCBs), with are highly hazardous to human health and the environment, and the U.S. Environmental Protection Agency (EPA) has developed stringent regulations governing the disposal of transformers that may contain them. *See* Dan Bench, U.S. Environmental Protection Agency, INDENTIFICATION, MANAGEMENT, AND PROPER DISPOSAL OF PCC-CONTAINING ELECTRICAL EQUIPMENT USED IN MINES, www.epa.gov/sites/production/files/documents/pcbidmgmt.pdf. While Ryder System has not submitted any direct evidence that the dielectric fluid/oil released from the

---

or pollutant or contaminant from a facility and is carrying out such contract").

transformer contained PCBs, the court concludes based on the circumstantial evidence in the record that the spill either released hazardous substances or threatened to release hazardous substances.

Third, the accident caused it to expend funds for the cleanup.

Finally, Ryder System has shown that Charleston Aluminum meets the definition of a potentially responsible person ("PRP") in § 9607(a), which defines PRPs as including the "operators of a facility at the time the hazardous wastes were disposed." § 9607(a); *United States v. Fleet Factors Corp.*, 901 F.2d 1550, 1553–54 (11th Cir. 1990), *superseded by statute on other grounds as stated in Monarch Tile, Inc. v. City of Florence*, 212 F.3d 1219 (11th Cir. 2000). Charleston Aluminum was the operator of the tractor trailer at the time the hazardous substances were spilled in the accident. (As noted earlier, a tractor trailer is a "facility" under CERCLA.) Under CERCLA, the definition of "disposal" includes the "discharge," "spilling," or

"leaking" of hazardous waste. *See* 42 U.S.C. § 9601(29) (defining "disposal" by reference to the Solid Waste Disposal Act (SWDA)); 42 U.S.C. § 6903(3) (SWDA) ("The term 'disposal' means the discharge, ... spilling, leaking, or placing of any ... hazardous waste into or on any land or water so that such ... hazardous waste or any constituent thereof may enter the environment"). Thus, Charleston Aluminum was the operator of a facility when the hazardous fluids were "disposed."

As Ryder System established Charleston Aluminum's liability under § 9607(a), and nothing in the record showed Ryder System to have fault in the matter, the court found Charleston Aluminum liable to Ryder System for the entire cost of the response: $ 116,990.23. In addition, the court awarded interest from September 22, 2016, pursuant to § 9607(a), which provides that "[t]he amounts recoverable in an action under this section shall include interest on the amounts recoverable," and "[s]uch interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or

(ii) the date of the expenditure concerned." 42 U.S.C. § 9607(a). See also Complaint (doc. no. 1) at 3 ¶ 24 (alleging that Ryder System paid USES the full amount of the invoice on or September 22, 2016).

Ryder System also sought costs of the suit and attorneys' fees in the amount of $ 19,058.73, which covers the period through February 28, 2019, the date of filing its motions for default judgment. "CERCLA § 107 [42 U.S.C. § 9607] does not provide for the award of private litigants' attorney's fees associated with bringing a cost recovery action." *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994). However, Ryder System has submitted its lease agreement with Charleston Aluminum, which includes two relevant provisions. First, it includes an indemnification clause whereby Charleston Aluminum agreed to reimburse Ryder System for the costs of emergency response contractors, environmental clean-up and disposal costs, if any, resulting from the use of Ryder System's vehicle. Second, it includes a provision that, if either party were to initiate

litigation to enforce its rights under the contract, the prevailing party in the litigation would be entitled to receive reasonable attorneys' fees and costs. Through this litigation, Ryder System seeks to enforce its right to indemnification under the lease agreement. Therefore, the court concluded that Ryder System is entitled to an award of fees and costs against Charleston Aluminum. Furthermore, the requested $ 17,411.50 in attorneys' fees and the $ 1,291.23 in court fees and expenses appear reasonable. Thus, the court has entered judgment for attorneys' fees and costs in the amount of $ 19,058.73 against Charleston Aluminum.

DONE, this the 6th day of December, 2019.

                               /s/ Myron H. Thompson
                               **UNITED STATES DISTRICT JUDGE**